829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Flor PALADINES, Defendant-Appellant
 No. 87-5539.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 24, 1987.
Decided Sept. 18, 1987.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, District Judge. (Cr. No. 86-459-HM)
 (Howard J. Schulman, Richard C. Bittner, on brief), for appellant.
 (Breckinridge L. Willcox, United States Attorney, E. Thomas Roberts, Assistant United States Attorney, on brief), for appellee.
 Before K.K. HALL, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Flor Paladines, an illegal immigrant from Colombia, appeals her conviction of conspiracy to distribute cocaine, possession with intent to distribute cocaine and interstate travel in aid of racketeering. She alleges as error the admission of cocaine found in her possession and statements made by her on the ground that they were the fruit of an unlawful arrest. She further alleges that the consent which she gave to a search of her shoulder bag and purse was involuntary and that the district court erred in allowing a government expert witness to testify about the manner in which drugs are distributed in the united States. We find no error, and affirm the conviction.
 
 
 2
 Paladines was approached by Special Agent Gary Simone, of the Drug Enforcement Administration, as she was making a phone call in the Amtrak station in New Carrollton, Maryland, at about 5:00 p.m., on August 26, 1986. Agent Simone had received a call from a confidential informant earlier that day. The informant had told him that a Hispanic woman named Flor would be arriving from New York at the New Carrollton Amtrak station at about 4:45 p.m., and that she would be transporting one to two kilograms of cocaine. The informant said the woman had dark hair and acne or some sort of complexion problem, and that she would be carrying a shoulder bag and a purse.
 
 
 3
 Agent Simone arrived at the Amtrak station with several other agents in the afternoon. There were several trains arriving from New York around 4:45 p.m. The agents attempted to monitor them all. They did not see the suspect get off a train, but about 5:00 p.m. Agent Simone saw Ms. Paladines standing by the pay phones adjacent to the Amtrak platform. She fit the description he had been given by the informant and she was carrying a shoulder bag and a purse. Agent Simone went over to her, identified himself as a police officer and asked her name. She responded, "Flor."
 
 
 4
 It then became apparent that Ms. Paladines spoke only Spanish, so Agent Simone indicated that she should go with him to the Amtrak station police office. She went readily, but left her shoulder bag on the floor as she walked away. The agents picked it up and brought it along.
 
 
 5
 After a 45-minute wait in the office, a Spanish-speaking agent arrived. She determined that Ms. Paladines was able to speak and write Spanish. She then explained to Ms. Paladines who the agents were and why they had detained her and advised her of her Miranda rights in Spanish. Ms. Paladines said that she understood her rights and was willing to answer questions; she also agreed to let the agents search her bag. She maintained, however, that she did not know what was in the bag. The agent wrote out in Spanish the following statements and read them to Ms. Paladines:
 
 
 6
 (1) The special agents of the Drug Enforcement Administration have asked me for permission to look into a blue bag that I brought with me from New York. They have also asked me for permission to search my pocket book, which is gray.
 
 
 7
 (2) I have not been treated unfairly; I have not had force used against me.
 
 
 8
 (3) I have given permission to the agents of the Drug Enforcement Administration to look into my blue bag and my gray pocket book.
 
 
 9
 Ms. Paladines read herself these statements and signed after each. The bag contained two kilograms of cocaine wrapped in clear plastic tape and put inside a plastic shopping bag. The shopping bag in turn was wrapped inside articles of clothing.
 
 
 10
 Ms. Paladines told the agents that she had been given the package in New York by a man she met at a party, who asked her to deliver it to another unfamiliar person in Washington.
 
 
 11
 At the suppression hearing, Ms. Paladines testified that she had never been given her Miranda rights.
 
 
 12
 The district court found that the agents had probable cause to arrest Ms. Paladines at the time they asked her to come to the train station office. Probable cause was present if facts known to the agents at the time reasonably warranted a belief that Ms. Paladines had committed or was committing an offense. United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984), cert. denied, 469 U.S. 1217 (1985). The presence or absence of probable cause is a practical assessment based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213 (1983). Here, a previously reliable informant had provided a description of a drug courier who was to arrive at the Amtrak station at a certain time. Finding someone matching the description at the station at that time, the agents asked her name and were told that it was Flor, the name the informant had said the courier would have. With this corroboration, the agents were justified in believing that she was transporting cocaine as the informant had said she would be. In United States v. Porter, 738 F.2d 622 (4th Cir.), cert. denied, 469 U.S. 983 (1984), a similar case, a detective was given a physical description of a drug courier by an anonymous informant. When the suspect was observed at the airport at the time predicted and identified as having the name supplied by the informant, this Court found that the detective had probable cause to arrest her. See also Draper v. United States, 358 U.S. 307 (1959). Because the detention of Ms. Paladines was lawful, there was no error in the admission of the cocaine found in her bag and her subsequent statements.
 
 
 13
 Ms. Paladines contends that her signed consent to a search of her shoulder bag and purse was involuntary because she was at the time confronted by law enforcement officers, because she was being illegally detained and because the Spanish-speaking agent was not sufficiently fluent in Spanish. The mere fact that a suspect faces known law-enforcement officers does not render a consent to search invalid unless the situation is one in which the suspect's "will has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). Even the fact of custody does not by itself demonstrate a coerced search, if the custody is legal, as we have found that it was here. United States v. Watson, 423 U.S. 411, 424 (1976). Ms. Paladines does not allege that threats or promises were made in order to force her consent.
 
 
 14
 The Spanish-speaking agent had grown up in a household where her parents and grandmother spoke Spanish, and had herself spoken Spanish since childhood. The Spanish consent form she wrote out was alleged to have grammatical errors and one incorrect word in it and Ms. Paladines testified that she could not understand the agent well enough to know what was going on when she consented. However, her testimony about the rest of her conversation with the agent, compared with the agent's testimony about their conversation, indicates that they were able to communicate clearly. In light of all the circumstances, we find that the district court was not in error when it determined that the consent was voluntary.
 
 
 15
 Finally, we do not find that the district court erred in admitting the testimony of the government's expert witness concerning methods of narcotics distribution. The witness, who had fifteen years' experience in narcotics law enforcement, testified about the value of the cocaine found in the shoulder bag and about the role of the drug courier in narcotics distribution schemes. He stated that couriers are usually known and trusted members of the drug organization because they are entrusted with highly valuable goods and large sums of money in dangerous situations and must know how to conduct themselves both in making the delivery and with police if they are caught.
 
 
 16
 The Federal Rules of Evidence permit testimony by experts who have specialized knowledge which will aid the jury to understand the evidence or determine a fact in issue. Fed. R. Evid. 702. Ms. Paladines argues that the witness was not speaking from personal experience and did not offer any proof that his opinions were based on facts or data which are of a type reasonably relied upon by experts in the field, as permitted by Federal Rule of Evidence 703. However, many years of experience in drug investigations has been held by this Court to satisfy the "reasonably relied upon" requirement of Rule 703. United States v. Monu, 782 F.2d 1209 (4th Cir. 1986). We believe the testimony was properly admitted.
 
 
 17
 For the foregoing reasons, we affirm the conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and it would not significantly aid the decisional process.
 
 
 18
 AFFIRMED.