UNITED STATES of America, Appellee,

v.

Ramon RODRIGUEZ–ROSARIO, a/k/a Samuel Colon, Defendant, Appellant.

No. 86–1970.

United States Court of Appeals,
First Circuit.

Heard May 6, 1987.

Decided April 25, 1988.

Gustavo Adolfo Del Toro, San Juan, P.R., for defendant, appellant.

Warren Vazquez with whom Daniel F. Lopez Romo, U.S. Atty., and Luis A. Plaza, Asst. U.S. Atty., Hato Rey, P.R., were on brief for appellee.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant was charged and convicted of forcibly assaulting and resisting a federal officer, 18 U.S.C. § 111, unlawful entry into the United States, 8 U.S.C. § 1325(1), and falsely representing himself to be a citizen of the United States, 18 U.S.C.

§ 911. The facts leading to his arrest and conviction are undisputed.

On May 31, 1986, appellant came to the airport in Isla Verde, Puerto Rico for the purpose of boarding a direct flight to New York. The Immigration and Naturalization Service (INS) had established a checkpoint in this terminal to conduct "pre-flight inspections" of passengers. *See* 8 C.F.R. § 235.5(a); *see also Lopéz Lopéz v. M. Aran, et al.*, 844 F.2d 898 (1st Cir.1988). The INS inspector manning this post asked appellant what was his citizenship, to which he responded in Spanish that he was an "American" citizen. He produced a Puerto Rico driver's license in the name of "Samuel Colón," claiming that to be his name. Because appellant's Spanish was heavily accented in a manner different from that spoken by native Puerto Ricans, the inspector asked appellant where he was born, to which appellant replied "Santurce" (a section of Puerto Rico's capital city of San Juan). The inspector then asked appellant whether he had attended school there, which question appellant answered in the affirmative. When asked where he attended school, appellant indicated that he did not remember the name of the school. Thereafter, when inquiry was made as to the extent of his education, appellant stated the "sixth course," thus using terminology foreign to Puerto Rico's educational system which follows an academic progression similar to that used in the rest of the United States. Appellant was then interrogated regarding the name of Puerto Rico's previous governor, whom he stated was "Hernández Colón," who is in fact the present governor. When asked how many beaches the town of Caguas had, a city located in a mountain valley of central Puerto Rico, appellant replied "five or six."

At this point the inspector informed appellant that he was under arrest and charged him with illegal entry. Appellant was then informed of his constitutional rights.

Appellant was asked to sit down but he refused to comply, forcing the inspector to seek the assistance of a police officer to guard him while an INS supervisor was called. When the supervisor arrived he questioned appellant about his citizenship to which he replied "of the United States." When asked as to his place of birth he repeated "Santurce," but when queried about his level of education appellant answered that he did not know. The supervisor concluded that appellant was not a citi-

zen of the United States and sought to have appellant accompany him voluntarily. He refused, however, causing the inspector to take out his handcuffs. Appellant reacted to this by saying that "nobody is going to put those handcuffs on me." The inspector managed to put one handcuff on appellant before he pushed the inspector back and hit him on the face with the open handcuff as he tried to punch the inspector with his fist. A screaming scuffle followed during which the inspector, the supervisor, and the police officer attempted unsuccessfully to subdue and handcuff appellant. The latter managed to break free and run for an exit door where he was tackled by the police officer. With the assistance of two additional INS officers, appellant was finally handcuffed and bodily carried, screaming and kicking, to the INS office at the airport.

Appellant was re-read his constitutional rights, and thereafter he admitted to entering Puerto Rico illegally from the Dominican Republic in February, 1983. He explained his violent behavior as resulting from his not wanting to be handcuffed. Appellant also admitted that the name on his driver's license, "Samuel Colón," was not his real name. At his trial, in which appellant voluntarily took the witness stand on his own behalf, he readily repeated these admissions.

Appellant raises two issues as the basis for his challenge to his arrest and conviction: (1) that the INS lacked probable cause to arrest him, and (2) that the preflight inspection was a "seizure" in violation of the Fourth Amendment and his constitutional right to travel. We conclude that appellant's arrest and conviction pass constitutional muster and thus affirm the district court.

Although under certain circumstances even a brief stop of an individual by law enforcement officers can give rise to Fourth Amendment implications,[1] such concerns are not involved where the stop and the interrogation that ensues regarding the individual's identity are consensual in nature. *INS v. Delgado, supra,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247 (1984); *United States v. Berryman,* 717 F.2d 650, 660–62 (1st Cir.1983) (en banc).

■ The facts previously related clearly establish that the initial stop of appellant to interrogate him about his citizenship was carried out in a non-coercive manner and that he voluntarily responded to the inspector's query. The very first answer, consensually given in his heavy non-Puerto Rican accent, alerted the inspector to the possibility of a crime having been committed, and provided the inspector with whatever "minimal level of objective justification [was needed] to validate" such additional steps as could be classified as a detention or seizure. *Id.* We need not recount what happened thereafter. It is clear that the situation rapidly escalated from one involving a minimal level of suspicion to one fully justifying arrest upon probable cause—and mostly as a result of appellant's consensual responses and actions. *See Illinois v. Gates,* 462 U.S. 213, 237–38, 103 S.Ct. 2317, 2331–32, 76 L.Ed.2d 527 (1983) (an officer has probable cause to arrest when, given the totality of the circumstances, he has reason to believe that the suspect is committing or has committed an offense); *see also United States v. Watson,* 423 U.S. 411, 423, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976) (an officer can legally make a warrantless public arrest on the basis of probable cause).

■ Because of this, appellant's contentions regarding the alleged unconstitutionality of the checkpoint procedures are moot. Appellant's stop and consensual interrogation must be judged against the same constitutional standards as are applicable to any stop and interrogation in the streets of our nation, the checkpoint setting being totally immaterial to such issues. *Cf. United States v. Martínez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Similarly, appellant's right to travel allegations are no more at issue in this case than when an individual is detained and arrested upon probable cause. Naturally such actions involve a restriction of the subject's movement. But if they otherwise comply with the Fourth Amendment's requirements, a valid detention and arrest also preclude claims based upon the right to travel. Furthermore, to the extent that such allegations are based on the contention that the use of a checkpoint, in itself, presents an unconstitutional restric-

1. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1309, 75 L.Ed.2d 229 (1983); *INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

tion upon the right to travel, again because of the consensual nature of the appellant's actions, we are precluded from passing upon such a contention in this case. *But see, López López v. M. Aran, et al., supra; cf. United States v. Martînez–Fuerte, supra.*

Lastly, we must not forget that in addition to the immigration-related charges, appellant also stands convicted of assaulting and resisting a federal officer. Even if our ruling were otherwise regarding the immigration-related charges, the appellant's conviction under 18 U.S.C. § 111 rests on independently firm grounds. The idea, as suggested by appellant's counsel in oral argument, that because of appellant's beliefs he was justified in taking the law into his own hands by resisting arrest, despite the availability of appropriate judicial procedures, would do little to promote law and order and much to encourage chaos and mayhem.

Appellant's conviction is *affirmed.*