**Marvin Keath CAMPBELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. C14–88–903–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 13, 1989.
Discretionary Review Refused
Nov. 8, 1989.

---

J.C. Castillo, Houston, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

Before BROWN, C.J., and PAUL PRESSLER and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

A jury found appellant guilty of possession of at least 400 grams of a controlled substance, namely cocaine, with intent to deliver. The court assessed punishment at life in prison and a $100 fine. We affirm.

On May 4, 1988, Officer Joe Harris, a detective with the Harris County Sheriff's Office, received a telephone call from a confidential informant. This informant had given information regarding narcotics in the past and had been proven reliable. Officer Harris was advised that a black man driving a 1986 or 1987 white Toyota pickup was, "on his way" to deliver cocaine at an apartment complex. Pursuant to this information, Officer Harris and two other undercover officers drove to the apartment complex. The officers circled but did not see the vehicle. They set up surveillance and waited for the suspect. At approximately noon, appellant, driving a white Toyota pickup, parked in the apartment complex. The appellant left the car carrying a brown paper bag as is frequently observed in narcotics transactions. The officers left their car and identified themselves. The appellant dropped the bag and ran into the courtyard of the apartment complex. The bag was found to contain a substance resembling cocaine. The appellant was apprehended and placed under arrest. Incident to the appellant's arrest, the officers searched the truck. The officers discovered another bag containing a substance that resembled cocaine and over $6,000 in cash. The bag discarded by the appellant was found to contain 440 grams, or approximately one pound, of cocaine.

In points of error one and two, the appellant claims that no probable cause existed for his arrest and, therefore, the trial court erred in overruling his motion to suppress both the cocaine in the bag dropped and the contents of the truck. In *Eisenhauer v. State*, 754 S.W.2d 159 (Tex. Crim.App.1988), the court addressed probable cause as follows:

> The fact that the arrest in the instant case was made without a warrant is irrelevant to the probable cause analysis. The totality of the circumstances approach applies to warrantless as well as warrant seizures of persons and property. *United States v. Mendoza*, et al, 722 F.2d 96 (5th Cir.1983); *Angulo v. State*, 727 S.W.2d 276 (Tex.Crim.App.1987); *Whaley v. State*, 686 S.W.2d 950 (Tex. Crim.App.1985); *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App.1984).

The officers had accurate information from an informant who had a past record of reliability. Time was of the essence because the informant advised the officers that the courier was on his way. The appellant was carrying a type of bag commonly used in drug transactions. Probable cause exists when an apparent state of facts is found to exist which would induce a reasonably intelligent and prudent person to believe that the accused had committed the crime charged. Black's–Law Dictionary, 5th Ed. (1979). An officer may make an arrest if there is probable cause to believe a person has committed or is about to commit a felony. *U.S. v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The officers here properly believed an offense was occurring and acted upon this belief.

In *Angulo v. State*, 727 S.W.2d 276 (Tex. Crim.App.1987) the court addressed similar facts. In *Angulo*, the facts were as follows:

> The record reflects that Officer F.L. Shafer received an anonymous telephone tip on June 23, 1983, which revealed the following information: Shafer was instructed that a red American Motors Pa-

cer automobile license plate identification RUV 662 contained narcotics; the informant told Shafer that the automobile would contain two Cuban males, one of whom would be appellant. In addition, the informant explained that the Pacer's gasoline cap was missing and that a red rag was being used in its place. The destination of the automobile would be 7201 Spencer Highway, Casa Maria Apartments, No 54. The informant also told Shafer that time was of the essence as the car was already enroute. The informant did not reveal the source of his information.

After reviewing this information from Shafer, Lieutenant William McBeth drove to the Casa Maria Apartments and observed the above-mentioned automobile occupied by two males parked in a space directly in front of Apt. No. 54. McBeth also noted the red rag hanging from the gasoline intake. McBeth observed the two men get out of the car as they were approached by others. When an additional automobile drove into the lot and parked directly behind the Pacer, McBeth, based on his experience in narcotics investigation, initiated an investigatory stop and ascertained that one of the original occupants of the automobile was appellant, the party named by the informant.

When Shafer arrived on the scene he talked briefly with appellant and then searched the vehicle. The search produced 2,000 methaqualone pills located in paper sacks inside the spare tire compartment. *Angulo,* 727 S.W.2d at 277. The court upheld the search of the vehicle. Probable cause existed not only because of the informant's tip but also from the independent corroboration by the police. The court analyzed the corroboration here with the corroboration in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Here, the independent police investigation corroborated the informant's tip by finding:

(1) A late model white Toyota pickup.
(2) Appellant was a black male driving the truck.

(3) The destination of the vehicle was the same apartment complex.
(4) The event happened within a short time of the tip.
(5) Appellant was carrying a brown paper bag known to be used in drug transactions.

In *Angulo* the court addressed corroboration as follows:

The independent police corroboration in the instant case was surely not any less extensive than in *Gates, supra,* simply because the officers had less time. The amount of time the officers have for investigation does not control the issue of probable cause, but rather, the amount of effective cooperation the officers make in the time allowed. In the instant case the independent investigation of the police confirmed aspect of the informant's tip save whether or not the vehicle actually contained the contraband. In the instant case the police even had reasonable belief the appellant was carrying the contraband.

Therefore, more probable cause existed here than in *Angulo.* In addition, the tip in *Angulo* was from an unknown informant. Here, the informant was known to be reliable.

Similarly, the action by the police was less intrusive. In *Angulo,* the police searched a car in which an expectation of privacy existed. Here, the police, after corroboration, viewed the appellant carrying a bag believed to contain narcotics. Regardless of whether the detention was an investigatory stop or an arrest, the police had corroboration on what was believed to be a narcotics transaction. It was reasonable for the police to believe that the appellant was in the course of committing a felony. Therefore, probable cause existed.

■ The seizure of the contents of the pickup truck was the result of an inventory search incident to the arrest of appellant. Probable cause existed for the arrest. Therefore, the search of the truck was also valid. Appellant's first and second points of error are overruled.

In his third point of error, the appellant complains of the jury strikes. Relying on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the appellant contends that the prosecutor systematically excluded persons of the black race from serving on the jury. The appellant failed to make a *prima facie* showing of systematic exclusion. The prosecutor struck the three blacks and Rozina Noormohamed, a white Arabic who was born in Kenya. Three blacks served as jurors. Therefore, fifty percent of the blacks in the venire pool actually served on the jury.

Even if the appellant had made a *prima facie* showing, the strikes were accompanied by racially neutral explanations. The strikes complained of were as follows:

(1) Juror No. 3, an Arabic female, not black.

(2) Juror No. 10, a black female, had problems believing police officers.

(3) Juror No. 7, a black male, young, close to defendant's age, and inattentive.

(4) Juror 15, a black male from Haiti, in Harris County only five years.

It appears that appellant is claiming that since Juror 3 was born in Kenya, which he describes as black African nation, she is the legal equivalent of a black. Juror No. 3 was not black and, therefore, no explanation was required.

Juror No. 10 was questioned extensively about problems in believing police officers. The juror stated that she would believe a member of the public over a police officer. The prosecutor struck Juror 10 because of her disbelief in the honesty of police officers. This is a valid neutral explanation for the strike.

Juror 11 was thirty-one years of age and the prosecutor had the impression that, "he just wanted to get out of here." The appellant was twenty-seven years of age and thus close in age to Juror No. 11. The prosecutor struck Juror 11 because of his age and his disinterest in the proceedings. The appellant claims that there were others who showed disinterest. Juror 18, a white male, was falling asleep, but he was forty-seven years of age. Juror No. 2, a thirty-two year old white male, who was not struck was an M.P. in the Texas State Guard. It is easy to understand why the prosecutor would not strike a police officer.

Juror No. 15 was from Haiti. The prosecutor stated that he was concerned about his attitude toward drugs since Haiti is known to be a transition point for Columbian cocaine.

All of the prosecutor's explanations were valid neutral explanations. The appellant failed to establish a *prima facie* showing of purposeful discrimination. No "Pattern" of strikes against black jurors was shown. The appellant complained of only four of the state's seven strikes. Three blacks actually served on the jury. Appellant's third point of error is overruled.

The judgment is affirmed.