619 A.2d 566

**Victor Angel TORRES**

v.

**STATE of Maryland.**

**No. 721, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 3, 1993.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County of Salisbury, on the brief), for appellee.

Submitted before MOYLAN, ALPERT and GARRITY, JJ.

MOYLAN, Judge.

This case is a straight replication of *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) and is completely controlled by it. The appellant, Victor Angel Torres, was convicted by a Wicomico County jury, presided over by Judge Daniel Long, of first-degree murder and the malicious destruction of property. On this appeal, he raises the following two contentions:

1. That Judge D. William Simpson, presiding at a suppression hearing, erroneously failed to suppress a confession that the appellant alleges was the product of an unlawful arrest; and

2. That Judge Long erroneously denied the appellant's motion for a new trial.

Tyrone Maxfield was stabbed to death sometime during the early morning hours of August 18, 1991. His body was found by a jogger at about 7 A.M. The motivation for the slaying apparently was a decision made the night before by the appellant and his codefendant to go "fag bashing."

In the course of investigating the murder, Maryland State Trooper T.J. McCarthy "developed probable cause to believe that two individuals, [the appellant and Michael Havens], were, in fact, involved in the death and responsible for the death of Mr. Maxfield." The defense did not dispute the probable cause for the arrest of either the appellant or Michael Havens. At issue, rather, were the circumstances of the arrest.

Trooper McCarthy learned, as of the morning of August 23, that the two suspects were probably located in Room 146 of the Atlantic Budget Inn on U.S. 13 in Delmar, near the Delaware state line. He also learned that they would probably be leaving for Florida that day. Several earlier attempts to locate the suspects had aborted when they "had fled and their location had been lost." Trooper McCarthy also "developed information that Havens might be carrying

a handgun" and that both suspects "routinely carried knives."

Before approaching the motel room, the police learned that it had been rented by someone named Denise Marshall, who listed two other people as being in her party. Trooper McCarthy knew that Denise Marshall was the appellant's girlfriend. At about 7 A.M., the police knocked on the door to Room 146. It was opened slightly by Denise Marshall but was still secured by a chain. The police cut the chain with bolt cutters and entered the room. Both the appellant and Havens were there arrested.

The appellant was given *Miranda* warnings while still in the motel room. He was not, however, interrogated at that time and did not make any statement. He was taken to the police barracks, arriving at approximately 8 A.M. At 3:15 that afternoon, he was again given *Miranda* warnings and at that time he gave a statement. At 6:45 P.M., he was again given *Miranda* warnings, after which he gave a taped confession. The suppression hearing judge specifically found that that confession was voluntary. That taped confession was the subject of the suppression hearing.

█ The appellant's theory of suppression is that his confession was the unattenuated fruit of the poisonous tree, the poisonous tree being the Fourth Amendment-violative warrantless arrest in a residential setting in contravention of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Although the motel room had been rented to Denise Marshall, the appellant, as an overnight guest legitimately on the premises, had Fourth Amendment standing to object. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The appellant was thus entitled to raise the challenge under *Payton v. New York.* That case established that a warrantless arrest in a home (or functional equivalent) is invalid, absent exigent circumstances. The appellant claims that the circumstances here were not sufficiently exigent to qualify for the *Payton*

exemption; the State, pointing both to probable weapons and to probable flight, argues to the contrary.

We find it unnecessary to resolve the *Payton* question for it is immaterial. Assuming, simply for the sake of argument, that the circumstances were not sufficiently exigent to qualify for the *Payton* exemption, the simple fact is that nothing flowed from the assumed Fourth Amendment violation. The *Payton* requirement is designed to protect the sacred threshold of the home (or motel room) from warrantless invasion. As *New York v. Harris* explained:

> "The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating the police gathered from arresting Harris in his home, rather than elsewhere, has been excluded, as it should have been; the purpose of the rule has thereby been vindicated."

495 U.S. at 20, 110 S.Ct. at 1644.

Had physical evidence been found in the protected motel room at the time of the warrantless arrest, it would necessarily have been suppressed. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Here, however, no physical evidence was discovered or seized in the motel room. Had the appellant given a statement or even a blurt while still in the motel room following his warrantless arrest, that too would have been suppressed just as the first statement in *New York v. Harris,* given under such circumstances, was properly suppressed. Here, however, no statement was given by the appellant while in the motel room.

The defendant in *New York v. Harris,* as the appellant here, was arrested for and convicted of murder. The defendant in *Harris* enjoyed Fourth Amendment protection in his apartment, just as the appellant here enjoyed derivative Fourth Amendment protection in his girlfriend's motel room. In *Harris,* it was held that there was a *Payton v. New York* violation because of the warrantless arrest in the

apartment, just as we have assumed a *Payton v. New York* violation here. In *Harris,* a confession taken in the apartment following the warrantless arrest, even after *Miranda* warnings were given, was suppressed. Here, there was no statement in the motel room following the warrantless arrest.

Once all parties move out of the constitutionally violated premises, however, there is a new beginning. Following the *Payton* violation, the defendant in *Harris,* as the appellant here, was taken to the police station. The defendant in *Harris,* as the appellant here, was there given *Miranda* warnings. The defendant in *Harris,* as the appellant here, then gave an incriminating statement. That second statement in *Harris,* unlike the first, was held to have been untainted by the earlier *Payton* violation. As the Supreme Court explained:

> "[W]e decline to apply the exclusionary rule in this context because the rule in *Payton* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Harris, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime."

*Harris,* 495 U.S. at 17, 110 S.Ct. at 1643.

The reason for not applying the "fruit of the poisonous tree" doctrine is that there is a clean break in the chain of cause and effect. The same probable cause, here indisputably present, that could have justified the issuance of an arrest warrant but would not justify a warrantless arrest inside a home would justify a warrantless arrest upon the street. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). An unlawful arrest of a suspect under *Payton v. New York* does not confer upon the suspect immunity from subsequent lawful arrest. Once the suspect is outside the protected premises, therefore, the initially invalid restraint ripens into valid restraint. As *Harris* explained:

"Nothing in the reasoning of that case suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest.... Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given *Miranda* warnings, and allowed to talk. For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested Harris on his doorstep, illegally entered his home to search for evidence, and later interrogated Harris at the station house. Similarly, if the police had made a warrantless entry into Harris' home, not found him there, but arrested him on the street when he returned, a later statement made by him after proper warnings would no doubt be admissible." (citation omitted).

*Harris,* 495 U.S. at 18, 110 S.Ct. at 1643.

A constitutionally supervening lawful restraint upon the street, be it in the form of a fresh arrest or be it in the form of an initially flawed arrest ripening into a valid one, effectively sanitizes everything that follows from any earlier contagion from a *Payton* violation. The effect (the confession) is no longer the product of the initial cause (the unlawful arrest in a residence) but is rather the product of the supervening cause (the lawful arrest upon the street). As the Supreme Court explained:

"Harris' statement taken at the police station was not the product of being in unlawful custody. Neither was it the fruit of having been arrested in the home rather than someplace else. The case is analogous to *United States v. Crews* [445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)] ... In that case, we refused to suppress a

victim's in-court identification despite the defendant's illegal arrest.... Here, likewise, the police had a justification to question Harris prior to his arrest; therefore, his subsequent statement was not an exploitation of the illegal entry into Harris' home." (citation omitted). *Harris*, 495 U.S. at 19, 110 S.Ct. at 1644.

■ In this case, there was probable cause for the appellant's arrest. At the time the appellant gave a statement, he was in lawful custody, notwithstanding having been at an earlier time in assumed unlawful custody. The appellant was given all of the warnings and admonitions mandated by *Miranda*. The appellant stated that he understood the *Miranda* warnings and rights. The appellant gave a statement that was found to have been voluntary. Our decision that the appellant's confession was properly received in evidence is fully supported by the holding of the Supreme Court in *New York v. Harris*, 495 U.S. at 20–21, 110 S.Ct. at 1644–45:

"We do hold that the station house statement in this case was admissible because Harris was in legal custody ... and because the statement, while the product of an arrest and being in custody, was not the fruit of the fact that the arrest was made in the house rather than someplace else.

. . . . .

We hold that, where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*."

■ The appellant's second contention is that Judge Long abused his discretion when he denied the appellant's motion for a new trial. The new trial motion was predicated upon the fact that the State, at sometime after the appellant's trial, *nol prossed* charges against the appellant's girlfriend, Denise Marshall. She had been charged as an accessory-after-the-fact. The defense desired to call her at the appel-

lant's trial but was precluded from doing so when she invoked her privilege against compelled self-incrimination. The State had given some indication five days prior to the appellant's trial that it probably would not proceed with the charges against Denise Marshall. The appellant now claims that the State was guilty of prosecutorial misconduct in delaying the entry of the *nol pros*.

Without suggesting any remote merit in the contention, the short answer to the claim is that the appellant has advanced no reason why he could not have raised at trial the issue he later raised in his motion for a new trial. The indication that the State would not proceed had come five days earlier. The privilege against compelled self-incrimination was invoked in the course of the trial. At trial, the appellant apparently asked the State to *nol pros* the charges against Denise Marshall and the State declined to do so. The appellant, however, did not remotely raise the issue he later raised in his post-trial motion. A post-trial motion cannot be permitted to serve as a device by which a defendant may avoid the sanction for nonpreservation.

In any event, we see no clear abuse of discretion on the part of Judge Long in denying the motion for retrial. *Hunt v. State*, 321 Md. 387, 422, 583 A.2d 218 (1990); *Wilhelm v. State*, 272 Md. 404, 429–431, 326 A.2d 707 (1974).

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.