United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 18, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-40540
Summary Calendar

United States of America,
Plaintiff-Appellee,

versus

Three Hundred Sixty-Nine Thousand Nine Hundred Eighty Dollars
($369,980) in United States Currency
Defendant,

Francelia Garcia, Abdiel Garcia Garcia
Claimants-Appellants

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. C-04-315
--------------------

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This is an appeal of a civil forfeiture action brought by the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A). Claimants, the Garcias, asserted claims to the $369,800 that was the subject matter of the action and filed a motion for judgment as a matter of law; additionally, they filed a motion to suppress evidence. The district court denied their motion to suppress and motion for judgment as a matter of law. It issued a judgment in favor of the plaintiff, in accordance with the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

jury verdict, that the currency in question was subject to forfeiture, because it either represented the proceeds of a drug trafficking offense or was used or intended to be used to facilitate the commission of an illegal drug offense.

The currency at issue was seized by Trooper Rios of the Department of Public Safety after he discovered it during a search of a 2004 pickup truck driven by Abdiel Garcia Garcia ("Garcia") and owned by his sister-in-law. Rios stopped Garcia for speeding on U.S. Highway 77 south of Kingsville, a route commonly used to smuggle drugs and drug currency. He noticed that Garcia's hands were shaking, and Garcia avoided eye contact. Garcia explained that he was returning from Houston where he had taken his wife to visit relatives for Christmas (which was later discovered to be untrue). Based upon Garcia's conduct, Rios asked Garcia if he could "check the car." Garcia assented. During the ensuing search, Rios noticed that the screws securing the back seat were shiny, indicating that they had recently been replaced. Rios felt behind the rear seat by placing his hand where the seat meets the back and felt a metal plate and a bundle of money, which turned out to be wrapped in cellophane and secured with duct tape. Initially, Garcia stated that the money belonged to his brother (which was later discovered to be untrue).

Garcia was arrested and given his Miranda warning; he thereafter refused to answer questions. The vehicle was impounded. Later, Trooper Correa, a certified dog-trained trooper, brought Nico, a canine trained to detect methamphetamine, heroin, cocaine,

and marijuana, to search the vehicle. Nico alerted on the driver side rear door and when allowed into the vehicle, alerted upon the back seat. The troopers disassembled the rear seat and found a specially-installed compartment containing five more bundles of cash, wrapped and secured in the same manner as the initial bundle.

Garcia claims that he saved the money in 2001 and 2002 from selling Mexican-imported vegetables in the United States. However, he filed no tax returns in 2000, 2001, or 2002; in 2003, his tax return showed an income of $27,918.00. He further asserts that he was returning from a trip to Houston, Texas. According to Garcia, he traveled to Houston to meet a friend, Jesus Melendez, who was to assist him by taking him to stores to purchase farm equipment. Garcia avers that upon arrival in Houston, he discovered that Melendez would not be able to travel to Houston to meet him, so he headed home with no equipment.

On appeal, the Garcias first argue that there was insufficient evidence to support the jury verdict that the currency represents the proceeds of a drug trafficking offense, or that it was used or intended to be used to facilitate the commission of an illegal drug offense. We disagree. While we review a trial court's conclusions of law de novo, we uphold a jury's verdict unless it lacks a legally sufficient basis. Interstate Contracting Corp. v. City of Dallas, Tex., 407 F.3d 708, 712 (5th Cir. 2005). We review the evidence and all reasonable inferences in the light most favorable to the jury's verdict. Id. In the instant case, when taken together, the quantity of currency, the method of packaging and

concealment of the currency in a specially-built compartment, the location of the traffic stop on a known smuggling route, the drug dog alert, the Garcias' lack of income, Garcia's absurd explanation for the presence of the currency, and his behavior during the traffic stop is sufficient evidence to support the jury verdict.

The Garcias assert secondly that the district court erred in denying their motion to suppress all fruits of the search of the vehicle. The Government argues that this court lacks jurisdiction to review this issue, as the Garcias appealed only the district court's judgment in favor of the plaintiff and order denying the Garcias' motion for judgment as a matter of law. We disagree. "An appeal from a final judgment preserves all prior orders intertwined with the final judgment. . . ." Cook v. Powell Buick, Inc., 155 F.3d 178 (5th Cir. 1998).

Exercising our jurisdiction to review this issue, we find no error in the district court's denial of the Garcias' motion to suppress evidence. Trooper Rios did not possess a search warrant or probable cause to search the interior of the pickup. However, Garcia consented to the search of the vehicle, and consent is a well-recognized exception to the usual requirement of a warrant or probable cause. United States v. Watson, 432 U.S. 411 (1976); Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Nevertheless, that consent must be freely and voluntarily given. United States v. Hurtado, 905 F.2d 74 (5th Cir. 1990)(en banc). Fifth Circuit case law suggests the following factors for consideration of whether a search was voluntary: (1) the suspect's custodial status; (2) the

presence of coercive police procedures; (3) the extent and level of the suspect's cooperation with the police; (4) the suspect's awareness of his right to refuse to consent; (5) his education and intelligence; and (6) his belief that no incriminating evidence will be found. United States v. Ponce, 8 F.3d 989, 997 (5th Cir. 1993). The record shows that Garcia was not in custody at the time of his consent and that he was not subjected to any coercive procedures. Garcia was fully cooperating with the police, and while there is no evidence of his awareness of his right to refuse to consent, proof of such is not required to show that his consent was voluntary. Schneckloth, 412 U.S. at 248; Ponce, 8 F.3d at 997. Further, there is no reason to question Garcia's intelligence, and Garcia believed that no incriminating evidence would be found, as the money in question was concealed in a compartment located under/behind the back seat.

The Garcias alternatively assert that the search exceeded the scope of the consent given. In this case, the Trooper Rios asked if he could "check the car." Garcia simply replied, "yes." Under Fifth Circuit case law, when a defendant chooses not to place any explicit limitation in his response to an officer's general request to search, this is evidence of general consent. See United States v. Mendoza-Gonzalez, 318 F.l3d 663, 667 (5th Cir. 2003).

The Garcias' third argument is that the district court erred in denying a hearing to determine whether drug-detection dog evidence was sufficiently reliable. We disagree. The Garcias filed a motion to exclude the dog alert evidence but did not

request any hearing. Nor did their motion to exclude evidence even mention any <u>Daubert</u> concerns. Regardless, we agree with our sister circuits that while district courts have a general gate-keeping duty under <u>Daubert</u>, the obligation does not require the court to hold a separate hearing. <u>U.S. v. Jawara</u>, 462 F.3d 1173 (9th Cir. 2006); <u>U.S. v. Charley</u>, 189 F.3d 1251 (10th Cir. 1999). Furthermore, a <u>Daubert</u> hearing is "the wrong procedural tool to challenge the reliability of a drug detection dog." <u>U.S. v. Berrelleza</u>, 90 Fed.Appx. 361 (10th Cir. 2004)(unpublished); <u>United States v. Outlaw</u>, 134 F.Supp.2d 807 (W.D.Tex.2001).

Finally the Garcias aver that the trial court erred in its responses to two jury questions. We review for abuse of discretion. <u>Battle v. Memorial Hospital at Gulfport</u>, 228 F.3d 544, 555 (5th Cir. 2000). We do not find that the trial judge's definition of the words "preponderance" or "prejudice" constitute an abuse of discretion. Likewise, we find no abuse of discretion in the trial judge's selection of testimony to be re-read to the jury, as this testimony was responsive to the jury's question.

For the foregoing reasons, we AFFIRM.