Justice Kennedy,
with whom Justice Ginsburg, Justice Breyer, and Justice Sotomayor join as to Part I, concurring.
I join the opinion of the Court in full. In holding that the Attorney General could be liable for damages based on an unprecedented constitutional rule, the Court of Appeals for the Ninth Circuit disregarded the purposes of the doctrine of qualified immunity. This concurring opinion makes two additional observations.
I
The Court’s holding is limited to the arguments presented by the parties and leaves unresolved whether the Government’s use of the material-witness statute in this case was lawful. See ante, at 740 (noting that al-Kidd “does not assert that his arrest would have been unconstitutional absent the alleged pretextual use of the warrant”). Under the statute, a magistrate judge may issue a warrant to arrest someone as a material witness upon a showing by affidavit that “the testimony of a person is material in a criminal proceeding” and “that it may become impracticable to secure the *745 presence of the person by subpoena.” 18 U. S. C. §3144. The scope of the statute’s lawful authorization is uncertain. For example, a law-abiding citizen might observe a crime during the days or weeks before a scheduled flight abroad. It is unclear whether those facts alone might allow police to obtain a material witness warrant on the ground that it “may become impracticable” to secure the person’s presence by subpoena. Ibid. The question becomes more difficult if one further assumes the traveler would be willing to testify if asked; and more difficult still if one supposes that authorities delay obtaining or executing the warrant until the traveler has arrived at the airport. These possibilities resemble the facts in this case. See ante, at 734.
In considering these issues, it is important to bear in mind that the material-witness statute might not provide for the issuance of warrants within the meaning of the Fourth Amendment’s Warrant Clause. The typical arrest warrant is based on probable cause that the arrestee has committed a crime; but that is not the standard for the issuance of warrants under the material-witness statute. See ante, at 743 (reserving the possibility that probable cause for purposes of the Fourth Amendment’s Warrant Clause means “only probable cause to suspect a violation of law”). If material witness warrants do not qualify as “Warrants” under the Fourth Amendment, then material witness arrests might still be governed by the Fourth Amendment’s separate reasonableness requirement for seizures of the person. See United States v. Watson, 423 U. S. 411 (1976). Given the difficulty of these issues, the Court is correct to address only the legal theory put before it, without further exploring when material witness arrests might be consistent with statutory and constitutional requirements.
II
The fact that the Attorney General holds a high office in the Government must inform what law is clearly established *746 for the purposes of this case. Mitchell v. Forsyth, 472 U. S. 511, 525 (1985). Some federal officers perform their functions in a single jurisdiction, say, within the confines of one State or one federal judicial district. They “reasonably can anticipate when their conduct may give rise to liability for damages” and so are expected to adjust their behavior in accordance with local precedent. Davis v. Scherer, 468 U. S. 183, 195 (1984); see also Anderson v. Creighton, 483 U. S. 635, 639-640 (1987). In contrast the Attorney General occupies a national office and so sets policies implemented in many jurisdictions throughout the country. The official with responsibilities in many jurisdictions may face ambiguous and sometimes inconsistent sources of decisional law. While it may be clear that one court of appeals has approved a certain course of conduct, other courts of appeals may have disapproved it, or at least reserved the issue.
When faced with inconsistent legal rules in different jurisdictions, national officeholders should be given some deference for qualified immunity purposes, at least if they implement policies consistent with the governing law of the jurisdiction where the action is taken. As we have explained, qualified immunity is lost when plaintiffs point either to “cases of controlling authority in their jurisdiction at the time of the incident” or to “a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.” Wilson v. Layne, 526 U. S. 603, 617 (1999); see also ante, at 741-742. These standards ensure the officer has “fair and clear warning” of what the Constitution requires. United States v. Lanier, 520 U. S. 259, 271 (1997).
A national officeholder intent on retaining qualified immunity need not abide by the most stringent standard adopted anywhere in the United States. And the national officeholder need not guess at when a relatively small set of appellate precedents have established a binding legal rule. If national officeholders were subject to personal liability *747 whenever they confronted disagreement among appellate courts, those officers would be deterred from full use of their legal authority. The consequences of that deterrence must counsel caution by the Judicial Branch, particularly in the area of national security. See Ashcroft v. Iqbal, 556 U. S. 662, 685 (2009). Furthermore, too expansive a view of “clearly established law” would risk giving local judicial determinations the effect of rules with de facto national significance, contrary to the normal process of ordered appellate review.
The proceedings in this case illustrate these concerns. The Court of Appeals for the Ninth Circuit appears to have reasoned that a Federal District Court sitting in New York had authority to establish a legal rule binding on the Attorney General and, therefore, on federal law enforcement operations conducted nationwide. See 580 F. 3d 949, 972-973 (2009). Indeed, this case involves a material witness warrant issued in Boise, Idaho, and an arrest near Washington, D. C. Of course, district court decisions are not precedential to this extent. Ante, at 741-742. But nationwide security operations should not have to grind to a halt even when an appellate court finds those operations unconstitutional. The doctrine of qualified immunity does not so constrain national officeholders entrusted with urgent responsibilities.