**Reversed and Remanded and Majority and Dissenting Opinions filed December 10, 2019.**



In The

# 𝕱ourteenth 𝕮ourt of 𝔄ppeals

---

## NO. 14-18-00683-CR

---

**VICTORIA RANAE BLUE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court
Lee County, Texas
Trial Court Cause No. 8733**

---

### DISSENTING OPINION

Based on the undisputed facts and testimony in the record, I disagree with the majority. The State failed to show with clear and convincing evidence that Appellant's consent was given voluntarily. *See* U.S. CONST. amend. IV; *Meeks v. State*, 692 S.W. 2d 504, 508–09 (Tex. Crim. App. 1985).

The reasonableness of the search is based on the totality of the circumstances. *State v. Villareal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014). In

examining the totality of the circumstances surrounding any alleged consent, the trial court should consider the circumstances before the search or seizure, the reaction of the accused to pressure, and any other factor deemed relevant. *See Reasor v. State,* 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

"The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary. . . ." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). The ultimate question "is whether the person's 'will ha[s] been overborne and his capacity for self-determination critically impaired,'" such that the consent to search must have been involuntary. *Id.* (quoting *United States v. Watson,* 423 U.S. 411, 424, 96 S. Ct. 820, 46 L.Ed.2d 598 (1976) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973))).

On the night of August 2, 2017, Appellant's husband was brutally murdered during an attempted robbery. Appellant witnessed the murder, and the couples' three young children were in the home at the time of the murder.

A written consent to search was requested by officers after Appellant's husband was murdered. The officer told Appellant the search was for the purpose of collecting evidence of her husband's homicide. Appellant testified during the suppression hearing that she did not remember signing the consent form.

It is undisputed, and supported by the record, that Appellant was distraught and upset after seeing her husband killed. Captain Jack Allen of the Lee County Sheriff's Office testified that Appellant's mental state was "distraught," she had "just witnessed a violent crime" and "learned the news that her husband was deceased," and further testified that she was upset and crying "like a woman who just saw her husband killed." His testimony clearly defines the mental and

2

emotional state of Appellant after the attempted robbery and subsequent death of her husband.

The undisputed facts before us are:

- Appellant's husband was killed in front of Appellant and their children at night during a robbery.
- There were five men who participated in the robbery.
- After the robbery, Appellant was visibly upset, crying, and grieving over the loss of her husband.
- Appellant was separated from her children.
- Appellant's movements were restricted; she was told to remain at the scene of the crime for questioning.
- Appellant testified that she did not remember signing the consent form and was in a state of shock.
- Although family members arrived at the scene of the homicide, Appellant was not allowed to approach or speak with them, and officers told Appellant's relatives to remain at the gate.
- Captain Allen testified Appellant was barefoot and was not allowed to go get shoes from her house.
- Although Captain Allen stated, "she would have been allowed to leave," Appellant was told to remain on the premises, was there for 12 hours during the investigation, was barefoot, and was told not to talk to any family members.
- Appellant was not allowed to use the bathroom at her house; officers took her away from the house to use a restroom but returned her to the scene of the homicide.
- The officers conducted an investigation from approximately 5 PM until 5AM, during which time Appellant laid on the ground for a period of time.
- The investigating officers stated they were only searching for evidence related to the homicide but had heard the deceased was a drug dealer.
- Captain Allen testified that the house was "secured" before consent was obtained;
- The vehicles were not used in any way during the homicide, and there was no evidence collected from the vehicles. However, the officers "secured" the vehicles before requesting consent to search from Appellant.
- Appellant was told not to approach the vehicles.
- The property, containers and all vehicle were "secured"; Appellant was not allowed near the vehicles or near her home.

3

- Captain Allen testified that the experience was traumatic for Appellant and her children, and her children were removed from the scene for that reason.
- Appellant testified she attempted to leave with her children but was told to remain at the crime scene for questioning.
- The investigating officers requested that Appellant sign a consent to search a mere five hours after the death of her husband.

Appellant's property, including the vehicles, were "secured"; therefore, Appellant did not have access to transportation to leave the property. The officers told Appellant to remain on the premises for questioning during this twelve-hour investigation. Appellant was unable to leave the premises or speak with anyone other than the police for at least five hours before signing the consent. The police physically took Appellant to use the restroom and returned her to the premises. They did not allow Appellant to speak with or even approach anyone other than the police for twelve hours. Appellant had no option but to remain on the premises where her husband was killed.

Although the trial court may choose to believe or disbelieve any or all of the witnesses' testimony during the suppression hearings, including Appellant's testimony that she did not remember consenting to the search, based on these facts, the State failed to meet its burden to prove by clear and convincing evidence that the consent was voluntary. *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). Given these uncontroverted facts and circumstances, it was an abuse of discretion for the trial court to deny Appellant's motions to suppress. Because the majority reaches the opposite conclusion, I respectfully dissent.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Christopher, Spain, and Poissant. (Christopher, J., majority).

Publish – Tex. R. App. P.47.2(b).